United States District Court
Southern District of Texas
**ENTERED**
June 10, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, § | | |
| Plaintiff, § | | |
| § | | |
| v. § | | CRIMINAL NO. 2:16-439 |
| § | | |
| ELIAS GONZALEZ ALVAREZ, § | | |
| Defendant. § | | |

**MEMORANDUM OPINION & ORDER**

Pending before the Court is Defendant Elias Gonzalez Alvarez's Motion for Compassionate Release and Sentence Reduction or in the Alternative for Sentence Modification to Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A). D.E. 74.

**I. BACKGROUND**

In 2017, a jury convicted Defendant of possession with intent to distribute 1.01 kilograms of cocaine (enhanced with prior conviction) and being a felon in possession of a firearm and ammunition. He has served 46 months (38%) of his 120-month sentence and has a projected release date, after good time credit, of February 5, 2026. He now moves the Court to reduce his sentence to time served or allow him to serve the remainder of his sentence on home confinement due to the "extraordinary and compelling" reasons presented by the COVID-19 pandemic and his unique vulnerability to infection by the virus.

On September 30, 2020, Defendant submitted an Informal Complaint Resolution Form through his unit counselor asking for a status update on his COVID-19 home confinement application. D.E. 74-2, p. 17. After his request for home confinement was denied, he filed a Request for Administrative Remedy on October 13, 2020, asking to "be placed on home confinement or be given written explanation of what criteria was used to den[y] me, yet approve

1

others." *Id.*, p. 16. The warden denied Defendant's request for administrative remedy on October 23, 2020, explaining that Defendant "was submitted for COVID home confinement, however, you were denied by the COVID committee review team . . . It was determined you are not appropriate for home confinement based on the totality of circumstances. Staff are following all relevant directives." *Id*, p. 15. Defendant filed a Regional Administrative Remedy Appeal on November 2, 2020, alleging that the warden's denial of his request for home confinement violated his due process and equal protection rights, but says he never received a response. *Id.*, pp. 13–14, He filed a Central Office Administrative Remedy Appeal on April 23, 2021, seeking transfer to home confinement, but says he does not expect a reply. *Id.*, pp. 7–12.

## II. MOTION FOR SENTENCE REDUCTION

### A. Legal Standard

The statute, 18 U.S.C. § 3582(c)(1)(A), authorizes a court to reduce a defendant's sentence under limited circumstances:

> **(c) Modification of an Imposed Term of Imprisonment.**—The court may not modify a term of imprisonment once it has been imposed except that—
> (1) in any case—
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
> (i) *extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.*

18 U.S.C. § 3582(c)(1)(A)(i) (emphasis added).

"Neither the [U.S. Sentencing Commission's compassionate-release] policy statement nor the commentary to it binds a district court addressing a prisoner's own motion under § 3582." *United States v. Shkambi*, 993 F.3d 388, 393 (5th Cir. 2021). Although "not dispositive," the commentary to U.S.S.G. § 1B1.13 nonetheless "informs [the Court's] analysis as to what reasons may be sufficiently 'extraordinary and compelling' to merit compassionate release." *United States v. Thompson*, 984 F.3d 431, 433 (5th Cir. 2021) (citing *United States v. Rivas*, — Fed. App'x —, 2020 WL 6437288, at *2 (5th Cir. Nov. 2, 2020)).

> **(A) Medical Condition of the Defendant.—**
> (i) The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid-tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.
> (ii) The defendant is—
>   (I) suffering from a serious physical or medical condition,
>   (II) suffering from a serious functional or cognitive impairment, or
>   (III) experiencing deteriorating physical or mental health because of the aging process,
>
> that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.
>
> **(B) Age of the Defendant. –**
> The defendant is (i) at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less;
>
> **(C) Family Circumstances. –**
> (i) The death or incapacitation of the caregiver of the defendant's minor child or minor children.
>
> (ii) The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

3

>  **(D) Other Reasons. –**
>  As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary or compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

U.S.S.G. § 1B1.13(1)(A), Application Note 1.

Even if "extraordinary and compelling reasons" for early release exist, the Guidelines' policy statements provide for a reduction in sentence only if a defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. §3142(g)." U.S.S.G. § 1B1.13(2). Factors relevant to this inquiry include: (1) the nature and circumstances of the offenses of conviction, including whether the offense is a crime of violence, or involves a minor victim, a controlled substance, or a firearm, explosive, or destructive device; (2) the weight of the evidence; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g).

The Court must also consider whether a reduction is consistent with the applicable section 3553(a) factors. *See* 18 U.S.C. § 3582(c)(1)(A); U.S.S.G. § 1B1.13. The applicable statutory factors include, among others: the defendant's history and characteristics; the nature and circumstances of the offense; the need for the sentence to reflect the seriousness of the offense, promote respect for the law, and provide just punishment for the offense; the need to deter criminal conduct and protect the public from further crimes of the defendant; the need to provide the defendant with, among other things, any needed medical treatment; and the various kinds of sentences available. *See* 18 U.S.C. §§ 3553(a)(1)-(7).

>  With respect to motions for compassionate release based on COVID-19:
>
>  A review of a motion for release based on COVID-19 is highly fact-intensive and dependent on the specific conditions of confinement and medical circumstances faced by the defendant. Hence, a prisoner cannot satisfy his burden of proof by simply citing to nationwide COVID-19 statistics, asserting generalized statements

4

> on conditions of confinement within the BOP, or making sweeping allegations about a prison's ability or lack thereof to contain an outbreak. . . . [T]he rampant spread of the coronavirus and the conditions of confinement in jail, alone, are not sufficient grounds to justify a finding of extraordinary and compelling circumstances. Rather, those circumstances are applicable to all inmates who are currently imprisoned and hence are not unique to any one person.

*United States v. Koons*, 2020 WL 1940570, at *4 & n.8 (W.D. La. Apr. 21, 2020) (citing *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

> To be sure, courts around the country, in some exceptional cases, have granted compassionate release where the defendant has demonstrated an increased risk of serious illness if he or she were to contract COVID. . . . But that is certainly not a unanimous approach to every high-risk inmate with preexisting conditions seeking compassionate release.
>
> The courts that granted compassionate release on those bases largely have done so for defendants who had already served the lion's share of their sentences and presented multiple, severe, health concerns. . . . Fear of COVID doesn't automatically entitle a prisoner to release.

*Thompson*, 984 F.3d at 434–35 (collecting cases) (footnotes and citations omitted).

"In general, the defendant has the burden to show circumstances meeting the test for compassionate release." *United States v. Stowe*, 2019 WL 4673725, at *2 (S.D. Tex. Sept. 25, 2019).

**B. Analysis**

Defendant is 48 years old and suffers from obesity and hypertension. According to the Centers for Disease Control and Prevention, "obesity (BMI $\geq 30$ kg/m$^2$ but $< 40$ kg/m$^2$)" and "possibly hypertension can make you more likely to get severely ill from COVID-19." *People with Certain Medical Conditions*, CDC (May 13, 2021), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html.

The Fifth Circuit recently found that hypertension did not make an inmate's case extraordinary, despite causing an increased risk for COVID-19 complications, reasoning that "nearly half of the adult population in the United States suffers from hypertension." *Thompson*,

5

984 F.3d at 434. *See also United States v. Harris*, 989 F.3d 908, 912 (11th Cir. 2021) (affirming district court's conclusion that defendant's hypertension was not extraordinary and compelling, noting that the conditions labeled by the CDC "as only 'might be' ones are listed there because of 'limited data and information' about the condition's impact and whether it increases the risk"); *United States v. Elias*, 984 F.3d 516, 521 (6th Cir. 2021) (affirming district court's denial of compassionate release where prisoner argued that her hypertension increased her risk of death from COVID-19). According to the CDC, the prevalence of obesity is similarly 44.8% among adults 40 to 59 years. *Adult Obesity Facts*, CDC (Feb. 11, 2021), https://www.cdc.gov/obesity/data/adult.html. "Though obesity is an 'underlying medical condition' that poses 'increased risk for severe illness from COVID-19,' courts have found that obesity does not provide adequate grounds for compassionate release." *United States v. Gheith*, 2020 WL 5850162, at *4 (E.D. La. Oct. 1, 2020), appeal dismissed, 2021 WL 1565813 (5th Cir. Feb. 17, 2021), (citing *United States v. Gordon*, 2020 WL 3971013, at *3 (E.D. Mich. July 14, 2020) (denying compassionate release of an obese defendant, reasoning that because "42.4% of American adults are obese and additional 32% are overweight," obesity "is not a condition so [extraordinary] that injustice would result if the relief is not granted"); *United States v. Whiteman*, 2020 WL 4284619, at *1 (E.D. Pa. July 27, 2020) (denying compassionate release of a defendant whose "only active health problems are obesity and high blood pressure"); *United States v. Takewell*, 2020 WL 4043060, at *3 (W.D. La. July 17, 2020) (denying compassionate release upon finding that the defendant's "general complaint obesity and hypertension are not consistent with extraordinary or compelling circumstances as provided by the policy statement and its commentary")). Defendant also "can point to no case in which a court, on account of the pandemic,

has granted compassionate release to an otherwise healthy defendant with two well-controlled, chronic medical conditions . . . ." *See Thompson*, 984 F.3d at 435.

Moreover, FPC Montgomery, where Defendant is incarcerated, currently has zero active COVID-19 case among inmates or staff. *See* https://www.bop.gov/coronavirus/ (last visited June 7, 2021). The BOP is also working with the CDC and the Federal Government's COVID-19 Vaccine/Therapeutics Operation to ensure the COVID-19 vaccine is "available to all staff and inmates who wish to receive it as quickly as possible." *Id.* As of June 7, 2021, 208 out of 334 inmates at FPC Montgomery have been fully vaccinated. *Id.* If Defendant has not already been offered a COVID-19 vaccine, he will be soon. On this record, the Court finds that extraordinary and compelling reasons do not exist that would warrant a sentence reduction. *See, e.g.*, *United States v. Davis*, 2021 WL 1382119, at *2 (D.N.J. Apr. 12, 2021) ("As vaccine access expands to inmates at FDC Philadelphia, the risk that Davis will contract a serious case of COVID-19 continues to decrease."); *United States v. Kaneshiro*, 2021 WL 1138058, at *3 (D. Haw. Mar. 24, 2021) ("The possible availability of the vaccine in the near future is therefore not something that [t]his court can ignore in ruling on Kaneshiro's compassionate release request.").

Finally, "Courts in the Southern District of Texas have ruled that defendants who move for compassionate release still need to initially petition the BOP and, subsequently, fully exhaust their administrative rights to appeal or wait for 30 days to lapse from such a petition in order to bring a motion pursuant to 18 U.S.C. § 3582(c)(1)(A)." *United States v. Gomez*, 2020 WL 2061537, at *1 (S.D. Tex. Apr. 29, 2020) (citing *United States v. Licciardello*, 2020 WL 1942787 (S.D. Tex. Apr. 22, 2020); *United States v. Orellana*, 2020 WL 1853797, at *1 (S.D. Tex. Apr. 10, 2020)). *See also, e.g.*, *United States v. Reeves*, 2020 WL 1816496, at *2 (W.D. La. Apr. 9, 2020). ("While the Court is well aware of the effects the Covid-19 pandemic . . . , § 3582(c)(1)(A) does not provide

this Court with the equitable authority to excuse Reeves' failure to exhaust his administrative remedies or to waive the 30-day waiting period."); *United States v. Clark*, 2020 WL 1557397, at *3 (M.D. La. Apr. 1, 2020) (denying motion for compassionate release based on fears of contracting COVID-19 in prison where defendant conceded he had not exhausted administrative remedies). Defendant has filed numerous administrative requests for home confinement, but there is nothing to indicate that he ever asked the BOP to bring a motion for sentence reduction on his behalf. Because Defendant has failed to demonstrate that he has complied with the exhaustion requirements under § 3582, his motion for a sentence reduction is not ripe for review, and the Court is without jurisdiction to grant it.

### III. MOTION FOR HOME CONFINEMENT

"With respect to home confinement, it is well-established that the BOP has sole authority to determine an inmate's placement, with consideration given to a district court's non-binding recommendation." *United States v. Reed*, 464 F. Supp. 3d 854, 862 (E.D. La. 2020) (citing 18 U.S.C. § 3621(b) (The BOP "shall designate the place of the prisoner's imprisonment" and will consider the sentencing court's recommendation in determining the placement.); *United States v. Voda*, 994 F.2d 149, 151 (5th Cir. 1993) (citing cases that conclude that a sentencing court "may recommend that a sentence imposed under section 3621 be served in a particular prison or jail," but "only the Bureau of Prisons has the actual authority to designate the place of incarceration")). *See also United States v. Forman*, 2021 WL 1536491, at *9 (E.D. Tex. Apr. 16, 2021) ("The BOP, however, has the exclusive authority to determine where a prisoner is housed; thus, the court is without authority to order home confinement."); *Valencia v. Carr*, 2020 WL 4581645, at *2 (N.D. Tex. Aug. 7, 2020) ("[W]ith regard to Petitioner's request to be released to home confinement, it

8

is well settled that there is no constitutionally protected right to be confined in any particular place, including in-home confinement.").

"Although Congress expanded the BOP's authority to transfer additional defendants to home confinement through the Coronavirus Aid, Relief, and Economic Security Act ('CARES Act'), nothing in the CARES Act gave district courts authority over placement decisions." *Reed*, 464 F. Supp. 3d at 862 (citing *United States v. McCann*,–– F.Supp.3d ––, 2020 WL 1901089, at *3 (E.D. Ky. Apr. 17, 2020); *United States v. Read-Forbes*, 454 F.Supp.3d 1113, 1118 (D. Kan. Apr. 16, 2020); *United States v. Engleson*, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020)). *See also, e.g.*, *United States v. Tolbert*, 2021 WL 209609, at *2 (N.D. Tex. Jan. 6, 2021) ("The memoranda of the Attorney General to the BOP Director, dated March 26 and April 3, 2020, the [CARES Act], and 18 U.S.C. § 3624(c)(2) do not grant courts statutory authority to modify a defendant's place of incarceration."); *United States v. Miller*, 2020 WL 2514887, at *1 (N.D. Tex. May 15, 2020) ("[N]either the CARES Act nor the First Step Act authorizes the court to release an inmate to home confinement."); *States v. Gentry*, 2020 WL 2131001, at *5 (W.D. La. May 5, 2020) ("[V]arious courts have recognized a district court has no jurisdiction to order home confinement under the CARES Act, as that decision is reserved to BOP.");

In a recent unpublished opinion, the Fifth Circuit explained:

[The CARES Act] does not grant a court the necessary power to order [an inmate] to be placed in home confinement. It is the BOP and the Attorney General who have the discretion to consider the appropriateness of home release based on certain statutory and discretionary factors. No inmate has a constitutional right to be housed in a particular place or any constitutional right to early release. *See Wottlin v. Fleming*, 136 F.3d 1032, 1037 (5th Cir. 1998); *Rublee v. Fleming*, 160 F.3d 213, 217 (5th Cir. 1998). It is not for a court to step in and mandate home confinement for prisoners, regardless of an international pandemic.

To be clear, though, vested authority in the BOP might not wholly eliminate a court's role in such decisions. *See Melot v. Bergami*, 970 F.3d 596, 599–600 (5th Cir. 2020). Under the Elderly Offender Home Detention Program, this court

clarified that discretion "does not mean that the Attorney General's or BOP's determinations regarding participation in the Program are entirely insulated from judicial review." *Id.* at 600. A challenge to the BOP's or Attorney General's interpretation of the statute would make judicial review appropriate. *Id.*

*Cheek v. Warden of Federal Medical* Center, 835 Fed. App'x 737, 739 (5th Cir. Nov. 24, 2020).

The Fifth Circuit further explained that, where the BOP has considered and denied an inmate's request for home confinement under the CARES Act, the proper vehicle to challenge that decision is a petition pursuant to 28 U.S.C. § 2241. *Id.* at 739, 740. A motion under § 2241 must be filed in the same district where a prisoner is incarcerated. *Pack v. Yusuff*, 218 F.3d 448, 451 (5th Cir. 2000). Defendant is currently incarcerated at FPC Montgomery, which is located in the Middle District of Alabama. Thus, assuming Defendant remains incarcerated in Montgomery, he should file any § 2241 petition in that court.

### IV. CONCLUSION

For the reasons stated above, Defendant's Motion for Compassionate Release and Sentence Reduction or in the Alternative for Sentence Modification to Home Confinement Pursuant to 18 U.S.C. § 3582(c)(1)(A) (D.E. 74) is **DENIED**.

It is so **ORDERED** this 9th day of June, 2021.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE